**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| PROTEGRITY CORPORATION, | : | |
| Plaintiff, | : | CIVIL ACTION NO. |
| | : | 3:13-CV-00715 (VLB) |
| v. | : | |
| | : | |
| DATAGUISE, INC., | : | September 3, 2014 |
| Defendant. | : | |

**MEMORANDUM OF DECISION GRANTING**
**DEFENDANT'S MOTION TO TRANSFER VENUE [Dkt. #36]**

I.      **Introduction**

The Plaintiff, Protegrity Corporation, ("Protegrity"), a corporation incorporated under the laws of The Cayman Islands, brings this action for patent infringement against Defendant Dataguise, Inc. ("Dataguise"), a Delaware Corporation with its principal place of business in Fremont, California.  [Dkt. #1, ¶¶ 1, 2].  The Defendant has moved to dismiss the complaint for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2) and for improper venue pursuant to Fed. R. Civ. P. 12(b)(3), or, in the alternative, to transfer the case to the Northern District of California pursuant to 28. U.S.C. § 1404(a).  [Dkt. #36, ¶ 1].  Since dismissal for lack of personal jurisdiction or improper venue would merely result in a potential delay while the Plaintiff refiled this action in another court, the Court

reviews first the Defendant's Motion to Transfer.[1]  For the reasons that follow, Defendant's Motion to Transfer is GRANTED.

## II.      Background

The following facts and allegations are taken from the Plaintiff's Complaint and from the Plaintiff's Opposition to the Defendant's Motion to Dismiss and the attached exhibits.  [Dkt #36, Complaint; Dkt. #49, Memorandum in Opposition to Motion to Dismiss or Transfer].  On November 20, 2001, United States Patent Number 6,321,201 ("'201 Patent") entitled "Data Security System for a Database Having Multiple Encryption Levels Applicable on a Data Element Value" was duly and regularly issued. [*Id.* at ¶ 8].  On March 19, 2013, United States Patent Number 8,402,281 ("'281 Patent") entitled "Data Security System for a Database" was duly and regularly issued.  [*Id.* at ¶ 14].  The Plaintiff owns both the '201 and '281

---

[1]      While personal jurisdiction is typically ruled on before venue, "when there is a sound prudential justification for doing so… a court may reverse the normal order of considering personal jurisdiction and venue." *Leroy v. Great W. United Corp.*, 443 U.S. 173, 180 (1979).  "In particular, reaching a venue motion in lieu of first addressing personal jurisdiction is sensible where the question of whether there is personal jurisdiction over a defendant is close and likely to yield further litigation." *Everlast World's Boxing Headquarters Corp. v. Ringside, Inc.*, 928 F. Supp. 2d 735, 741 (S.D.N.Y. 2013) (citing *Cavit Cantina v. Browman Family Vineyards, Inc.*, 656 F. Supp. 2d 421, 424 (S.D.N.Y. 2009)).  Furthermore, "[t]o address a venue challenge does not require a preliminary finding that 'the transferring court has personal jurisdiction over the defendants.'" *Id.* (quoting *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 465 (1962)).  "Further, where personal jurisdiction would likely exist in the transferee district over a defendant who contests personal jurisdiction in the [pending District], it is 'prudentially appropriate to address venue first since a decision to transfer would render personal jurisdiction analysis with respect to [that District] irrelevant.'" *Id.* (quoting *Basile v. Walt Disney Co.*, 717 F. Supp. 2d 381, 385-86 (S.D.N.Y. 2010)).

patents and alleges that the Defendant has committed patent infringement, in violation of 35 U.S.C. § 271 *et seq.*[2]  [*Id.* at ¶¶ 9, 10, 15, 16].

The Plaintiff "develops technologies and commercial products through its wholly owned subsidiaries Protegrity USA, Inc. and Protegrity Research and Development AB."  [Dkt. #49-1, Declaration of Andrea Ahlquist]. The Plaintiff "has no employees." [Dkt. #49, Pl's. Ex. A at ¶ 9] The Plaintiff "carries out its commercial utilization of its technology and intellectual property through its wholly owned subsidary Protegrity USA, Inc., which sells and offers to sell within and to outside of the U.S. the products embodying the '201 Patent and the '281 Patent. [*Id.*].  Protegrity USA, which has 29 employees, is Protegrity's "principal operating subsidiary"  and holds the exclusive license to use, make, sell, and offer to sell embodiments of the '201 Patent and the '281 Patent."  [*Id.*]. The Plaintiff "Protegrity Corporation has retained the right to recover for infringement." [*Id.*].  The Plaintiff alleges that "[a]ll profits generated by Protegrity USA, Inc. are accumulating and currently retained in this wholly owned subsidiary of Protegrity Corporation and will inexorably flow to Protegrity Corporation."  [*Id.*].

---

[2]  The relevant portion is 35 U.S.C. § 271(a) provides that "[e]xcept as otherwise provided in this title, whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent."

The Plaintiff does not disclose any facts surrounding the invention of the data security system at issue or the '201 Patent and the '281 Patent. While it alleges that it "develops technologies and commercial products through its wholly owned subsidiaries Protegrity USA, Inc. and Protegrity Research and Development AB," it does not allege that its Connecticut subsidiary, Protegrity USA, played any role in the invention of the data security systems or the application for the 201 and the '281 Patents. Nor does it allege facts describing the terms of the role of Protegrity Research and Development AB. In essence therefore, the Plaintiff alleges only that it is a foreign Cayman Island corporation, that it is the owner of the patents in suit, that it is the only party entitled to bring suit for infringement of the patents, and that it is the recipient of all of the profits derived from the patents in suit. With respect to Protegrity USA it is alleged only that an unspecified number of its unidentified employees will be called to offer unspecified testimony.

The Plaintiff argues that Dataguise has a significant connection to Connecticut because: Dataguise previously employed a resident of Connecticut; Dataguise applied and obtained a Connecticut Tax Registration Number and Location Number; and Dataguise has actively and repeatedly solicited business and targeted potential customers in Connecticut by means of email, phone calls, and face-to-face meetings. [Dkt. #49, Pl's. Mem. of. Opp'n. at 3–6]. These alleged sales solicitations to

Connecticut were organized and executed primarily by Ron Sample and Alex Pike during the alleged offending period. [*Id.*]. Sample alleged, however, that none of the solicitations "resulted in a sale, or an offer by Dataguise of terms on which it would sell its product to the potential customer, or an order from the potential customer for a product." [Dkt. #37-2, Declaration of R. Sample, ¶ 5]. Based on the affirmation, the solicitations appeared to have taken the form of product demonstrations, and there are no allegations that any specific pricing was given or specific offers to sell were made.

The Plaintiff does not claim that the Defendant made or used the alleged offending product in Connecticut, nor does the Plaintiff allege that the Defendant was ever successful in any of its Connecticut-targeted solicitations, and, accordingly, makes no allegation that the Defendant ever sold the offending product in Connecticut. The Plaintiff's sole patent infringement claim is that the Defendant offered to sell products incorporating Patents '201 and '281 in Connecticut.

III.    Legal Standard

A district court may transfer venue pursuant to 28 U.S.C § 1404(a), which provides, in relevant part, that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). In deciding whether transfer under this section is proper, courts

are required to conduct an "individualized, case-by-case consideration of convenience and fairness." *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964). The district court should consider factors affecting the interest of justice and trial efficiency. *Hanninen v. Fedoravitch*, 583 F. Supp. 2d 322, 331 (D. Conn. 2008); *Miller v. Meadowlands Inc.*, 822 F. Supp. 61, 66 (D. Conn. 1993). As this is a patent case, the Court is bound by the law of the Federal Circuit. *See* 28 U.S.C. § 1295(a)(1) ("[t]he United States Court of Appeals for the Federal Circuit shall have exclusive jurisdiction of an appeal from a final decision of a district court of the United States… in any civil action arising under… any Act of Congress relating to patents…"); *see also Hale Propeller, L.L.C. v. Ryan Marine Prod. Pty., Ltd.*, 98 F.Supp.2d 260, 262 (D. Conn. 2000) ("A district court looks to the law of the Federal Circuit in patent infringement actions, even on issues of personal jurisdiction.").

The Federal Circuit, however, applies the law of the district court's regional circuit in ruling on a motion to transfer pursuant to 28 U.S.C. § 1404. *In re Barnes & Noble, Inc.*, 743 F.3d 1381, 1383 (Fed. Cir. 2014) (when the Federal Circuit reviews a district court's ruling on a motion to transfer, it applies the law of the regional circuit). In the Second Circuit, the efficiency and fairness factors considered by courts on a motion to transfer are: the plaintiff's choice of forum; the convenience of the parties and witnesses; the availability of process to compel the attendance of witnesses; the relative means of the parties; the relative familiarity of the courts with the applicable law; and the interests of justice. *D.H. Blair & Co.,*

*Inc. v. Gottdiener*, 462 F.3d 95, 106-07 (2d Cir. 2006); *N.Y. Marine and Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 112 (2d Cir. 2010).

## IV.    Discussion

The parties do not dispute that this case could have been brought in the Northern District of California.  Since the parties' main contention in the present motion is whether or not this Court has personal jurisdiction over the Defendant, not whether the pleadings are insufficiently pled, it is likely that the Plaintiff will merely refile this action in another district should the Court grant the Defendant's motion to dismiss for lack of personal jurisdiction.  Therefore, the Court finds that the interests of justice are better served by first considering the issue of whether transfer is warranted.  *See Leroy*, 443 U.S. at 180; *Everlast World's Boxing Headquarters Corp.*, 928 F. Supp. 2d at 741.

As the Plaintiff has asserted, it has several causes of action pending, and a number of others that have concluded, in this District.  Dataguise filed an order in one of these cases as subsequent authority in support of its motion to transfer venue.  [Dkt. #52, *Protegrity v. Informatica*, No. 13–CV–1410 (D. Conn. filed Mar. 18, 2014)].  Protegrity Corporation, the same Plaintiff in this matter, brought suit in the District of Connecticut against Informatica, and the defendant made a motion to transfer the case to the Northern District of California. [*Id.*].  After carefully considering all of the relevant fairness and efficiency factors, Judge Covello ruled in favor of the defendant and transferred the case to California.  [*Id.*].  The complaint and

argument opposing the transfer motion in that case are nearly identical to the respective documents filed in this case. Although the defendants are different in the two cases, given the nearly identical nature of the arguments for and against transfer and the parallelism of the facts, this Court finds the ruling in *Informatica* to be persuasive.

The Court will now examine the merits of the motion to transfer by analyzing the fairness factors generally applicable to this inquiry.

      1.  <u>Protegrity's Choice of Forum</u>

The plaintiff's choice of forum is typically given great deference, but "[w]here the forum is not the plaintiff's home district, however, the plaintiff's choice of forum is given less deference. This is true even when the plaintiff's home district is adjacent to the forum." *Nabisco, Inc. v. Brach's Confections, Inc.*, No. 00CIV5875(AGS), 2000 WL 1677935, at *4 (S.D.N.Y. Nov. 8, 2000). In *Nabisco*, the defendant brought a motion to transfer to the Eastern District of Tennessee from the Southern District of New York. *Id.* at *1. This motion was granted after the court found that the plaintiff's choice of the Southern District of New York was "entitled to little weight" since the plaintiff was a Delaware corporation with its principal place of business in New Jersey. *Id.* at *2, *5.

Here, Protegrity alleges that it is a resident of Connecticut because its wholly-owned subsidiary is located in Stamford, Connecticut. However, there are no allegations made by the Plaintiff that would permit this Court to disrespect the corporate form and treat the Plaintiff's subsidiary as its

alter ego. *SFA Folio Collections, Inc. v. Bannon*, 585 A.2d 666, 672-73

(Conn. 1991) (finding that it is a fundamental principle of corporate law that

the parent corporation and subsidiary be treated as separate and distinct

legal persons, even if the subsidiary is wholly owned by the parent and

they share officers). Connecticut state courts have adopted the Supreme

Court's ruling in *Cannon Mfg. Co. v. Cudahy Packing Co.*, 267 U.S. 333

(1925) that even corporate separation that is merely formal will still be

enforced. *Hersey v. Lonrho, Inc.*, 807 A.2d 1009, 1013-14 (Conn. App. Ct.

2002).

This corporate form may be cast aside in a limited number of

exceptional circumstances, including when the parent and subsidiary are

found to have such a unity of interest and ownership as to be an alter ego

of each other, thus requiring that the corporate veil be pierced. *SFA Folio

Collections*, 585 A.2d at 672 n 8.

> The separate corporate entities or personalities of affiliated
> corporations will be recognized, absent illegitimate purposes,
> unless: "(a) the business transactions, property, employees,
> bank and other accounts and records are intermingled; (b) the
> formalities of separate corporate procedures for each
> corporation are not observed… (c) the corporation is
> inadequately financed as a separate unit from the point of view
> of meeting its normal obligations… (d) the respective
> enterprises are not held out to the public as separate
> enterprises; (e) the policies of the corporation are not directed
> to its own interests primarily but rather to those of the other
> corporation."

*Id.* at 673 (quoting H. Henn & J. Alexander, *Laws of Corporations* § 149, pp.

355-56 (3d Ed. 1983)).

Protegrity has neither suggested or demonstrated that the corporate veil should be pierced in this case. There is nothing in the Plaintiff's Complaint or opposition papers to this motion that could lead this Court to find that there was extensive intermingling between the companies, that the formalities between the two entities were not observed, that one corporation lacks financial independence, that the two companies are not held out to the public as separate enterprises, or that the policies of one corporation are directed primarily to the other's interests. While an affidavit provided by the Plaintiff mentions that Protegrity does not have any employees and that its principle activities are conducted through its subsidiary, this is not sufficient on its own to permit this Court to disregard the corporate form. [Dkt. #49, Exhibit A]. If the Plaintiff is attempting to label itself as merely a holding company for the patents utilized by the subsidiary, it cites no authority for the proposition that this relationship alone permits the Court to disregard the corporate structure, and it provides no information detailing the relationship between the Plaintiff and its subsidiary aside from the fact that the subsidiary is wholly owned and has a license to use and sell the patents at issue in this case. Furthermore, the Plaintiff does not describe what actions constitute its principle activities, nor does it state how these activities are sufficient to render the entities alter egos. Conclusory statements about the flow of profits are similarly insufficient to persuade this Court to disregard the corporate structure. Protegrity leaves this Court speculating as to the relationship

between the subsidiary and the parent as a result of its general statements, but it was the Plaintiff's burden to persuade this Court that its subsidiary was nothing more than an extension of itself.  Without further explanation or factual allegations, the argument is insufficient to permit this Court to pierce the corporate veil.

This conclusion is further supported by Judge Covello's previous findings in *Informatica.*  He held that the "court does not conclude that Protegrity and its subsidiary should be considered collectively as headquartered in Connecticut."  [Dkt. #52, *Protegrity v. Informatica*, No. 13–CV–1410, 6 (D. Conn. filed Mar. 18, 2014)].  Accordingly, since the Plaintiff has not demonstrated any real connection to the forum as it is a foreign Plaintiff, its choice of Connecticut is given little deference.

### 2.  <u>Convenience of the Parties and Witnesses</u>

Protegrity argues that Dataguise is merely asking the Court to transfer the inconvenience of litigating in a foreign forum from the Defendant to the Plaintiff.  [Dkt. #49 at 17-18].  Protegrity alleges that all of its witnesses are located in Connecticut, but it does not provide any details as to the number of witnesses or any specifics related to any one particular witness, including their identity or what contribution they would add to the proceedings.  [*Id.* at 18].  Dataguise, however, claims that "none of [its] witnesses reside in Connecticut and the most relevant reside in California." [Dkt. #48, Def's. Reply in Supp. of Mot. to Dismiss at 9].  "A party moving for transfer on the ground of the convenience or availability of witnesses

must specify the identity of key witnesses and the nature of their likely testimony, and support these statements with affidavits." *Costello v. Home Depot U.S.A., Inc.*, 888 F. Supp. 2d 258 (D. Conn. 2012). Dataguise meets this standard by specifying that its CEO, Executive Vice-President, and CFO are all based in California, and that they will be used to testify about the nature of Dataguise products, revenues, expenses, and profits. [Dkt. #37 at 13]. The Plaintiff, however, only asserts that "all of Protegrity's witnesses and employees are located in Connecticut." [Dkt. #49 at 18].

In *Pecorino*, the moving party identified seven of its witnesses, all of whom were either current or former employees, and the opposing party identified two party witnesses. *Pecorino v. Vutec Corp.*, 934 F.Supp.2d 422, 436-37 (E.D.N.Y. 2012). The court ruled that the convenience of party witnesses was not as relevant to the transfer analysis as for non-party witnesses absent an allegation that the party witnesses would refuse to participate in the proceedings. *Id.* Accordingly, because neither party identified non-party witnesses, their convenience alone does not weigh heavily for or against transfer. *Id.* at 438.

However,

"[i]n considering the convenience of the witnesses, the Court should not merely tally the number of witnesses who reside in the current forum in comparison to the number located in the proposed transferee forum. Instead, the Court must qualitatively evaluate the materiality of the testimony that the witnesses may provide."

*Pecorino v. Vutec Corp.*, 934 at 436 (quoting *Neil Bros. Ltd. v. World Wide Lines, Inc.*, 425 F. Supp. 2d 325, 329 (E.D.N.Y. 2006). Accordingly, courts also consider not just the convenience of the witnesses, but also must weigh their relevance to the proceeding. "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer." *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) (quoting *Neil Bros. Ltd. v. World Wide Lines, Inc.*, 425 F. Supp. 2d 325, 330 (E.D.N.Y. 2006)). As a result, the witnesses of the infringing party will generally be more relevant to a patent infringement case than the witnesses of the Plaintiff. Dataguise has identified at least three witnesses located in California that they will use to "provide testimony about the development and operation of Dataguise's products, which will be relevant to non-infringement . . . ." [Dkt. #37 at 13]. As stated previously, Protegrity is a foreign corporation and has not identified any specific witness it intends to use at trial, aside from generally claiming that all of its employees and witnesses are located in Connecticut. *See Nabisco, Inc.*, 2000 WL 1677935, at *2 ("The parties' statements that they might call various unidentified employees . . . are too vague for the Court to consider here."). However, as the Plaintiff has already alleged that it has no employees, it must mean that the employees of its wholly-owned subsidiary are located in Connecticut. These employees work for the subsidiary that merely possesses a license to sell or offer to see products incorporating the patents. It is not clear to the Court what relevance these potential witnesses may have except as

related to damages.  Even though the Plaintiff makes the conclusory allegation that it "develops technologies and commercial products through its wholly owned subsidiaries Protegrity USA, Inc. and Protegrity Research and Development AB," it is unclear what Protegrity USA actually does in this process, let alone if any of its employees will have technological knowledge relevant for the infringement proceedings.  Further, since all of the profits derived from the patents inexorably flow to Protegrity, it would appear some officer, director or other representative of Protegrity would be able if not required to testify as to damages.

Accordingly, since the Plaintiff has not identified any specific witnesses or demonstrated that any of its witnesses in Connecticut will provide relevant information for the proceedings, and since the Defendant has specifically identified three California-based witnesses that are relevant to the infringement suit, this factor weighs in favor of a transfer.

3.  <u>Availability of Process to Compel Attendance</u>

Protegrity argues that this factor weighs in favor of maintaining the suit in Connecticut because its unidentified former employees, the substance of whose testimony is not disclosed, live in Connecticut and would not be subject to process in California.  [Dkt. #49 at 19].  Although not subject to process in California, "former employees are not entitled to the same deference shown to other non-party witnesses because they are more likely willing to attend trial than other non-party witnesses." *Pecorino*, 934 F.Supp.2d at 437 (citing *Pilevesky v. Suntrust Bank*, No. 10

Civ. 2290, 2010 WL 4879006, at *3 (E.D.N.Y. Nov. 22, 2010)).  Dataguise argues that this point is likely neutral to both parties.  [Dkt. #37 at 14]. Since Protegrity has not offered any specific witnesses that it intends to call, let alone included allegations that they would refuse to attend proceedings in California, the Court finds that this point is neutral.  [Dkt. #49 at 19].  Moreover, even if the subsidiary's employees were not inclined to travel to California for the proceedings, the Plaintiff, who is alleged to wholly own the subsidiary and possess all of the corporate profits for both entities, surely has the power to compel such attendance.  Accordingly, this factor does not weigh for or against a transfer.

### 4. Location of Physical Evidence

Protegrity argues that this point is neutral because modern technology drastically reduces the burden of transferring evidence across the country.  [*Id.*].  Conversely, Dataguise argues that this point still favors a transfer even if the documents are electronic and are easier to transport than physical documents because the majority of the data is still in California.  [Dkt. #48 at 10].  "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) (quoting *Neil Bros. Ltd.*, 425 F. Supp. 2d at 330).  In *Charter Oak Fire Ins. Co. v. Broan-Nutone, L.L.C.*, the court stated that even though "modern photocopying technology and electronic storage deprive

this issue of practical or legal weight," the "location of relevant documents is [still] entitled to some weight."  *Charter Oak Fire Ins. Co. v. Broan-Nutone, L.L.C.*, 294 F. Supp. 2d 218, 221-22 (D. Conn. 2003).  In that case, the court found that because the relevant documents were located in Tennessee, the factor weighed slightly in favor of a transfer.  *Id.*  Even though the Court agrees that modern electronic discovery and methods of transmitting data, including flash drives, separate FTP servers, and internet-based discovery dumping sites, render this factor mute, it follows precedent and holds that this point weighs ever so slightly in favor of a transfer because the bulk of the relevant evidence in this case is in California.

     5.  <u>Locus of Operative Facts</u>

     Protegrity argues that the evidence of patent infringement is likely found in both California and Connecticut because one is the location of the development of the infringing product and the other is the locus of where the alleged infringement occurred.  [Dkt. #49 at 19].  Dataguise does not explain why this factor weighs in favor of a transfer aside from repeating its argument discussed under the location of physical evidence factor.  [Dkt. #48 at 10].

     California, as Dataguise's base of operation, would almost certainly be where some acts or planning of the alleged infringement took place.  Therefore, it is clear that California does constitute one locus of operative facts in this case.  The Plaintiff, however, argues that the alleged patent

infringement occurred in Connecticut, presumably through Dataguise's alleged sales solicitations in the state, and, therefore, Connecticut also is a relevant locus to the dispute. Pursuant to the statute, infringement occurs where any person "makes, uses, offers to sell, or sells" any patented invention. 35 U.S.C. § 271(a). Based on the allegations in this case, Connecticut can be a locus of operative facts only if the alleged sales solicitations made by Sample can be defined as "offers to sell," as there are no allegations that any sale was actually made in Connecticut, or that the alleged infringing product is made or used in Connecticut.

Defining "offers to sell" has been an issue in several decisions rendered by the Federal Circuit. That court found that by including "offers to sell" in the statute, Congress intended to prevent companies from "generating interest in a potential infringing product to the commercial detriment of the rightful patentee." *3D Sys., Inc. v. Aarotech Labs., Inc.*, 160 F.3d 1373, 1379 (Fed. Cir. 1998). In *3D Sys.*, the court found that under § 271(a), the defendant's letters to California residents that included a description of the infringing product with price quotations created an "offer to sell." *Id.* However, in subsequent decisions, the court clarified that the interpretation of the term "offer to sell" is to be defined "according to the norms of traditional contractual analysis." *See Rotec Indus., Inc. v. Mitsubishi Corp.*, 215 F.3d 1246, 1254-55 (Fed. Cir. 2000).

Accordingly, several district courts have held that to constitute an "offer to sell" under the statute, "an offer must create a power of

acceptance in the offeree." *Xactware, Inc. v. Symbility Solution, Inc.*, 402 F. Supp. 2d 1359, 1368 (D. Utah 2005) (citing *Moldflow Corp. v. Simcom, Inc.*, 296 F. Supp. 2d 34, 43-44 (D. Mass. 2003)); *EBS Auto. Servs. v. Ill. Tools Works, Inc.*, No. 09-cv-996(JS)(MDD), 2011 WL 4021323, at *12 (S.D. Cal. Sept. 12, 2011) (same).  In *Moldflow*, the court noted that the defendant's marketing representative contacted several companies by sending the defendant's promotional materials and other advertisements in the forms of "flyers."  296 F. Supp. 2d at 44.  Even though some of the materials contained a description of the allegedly infringing product, "as well as some pricing information," the court noted that they "lacked other terms necessary to create the power of acceptance on the part of the recipients. Specifically, the materials did not include information about quantity, time of delivery, or terms of payment."  *Id.*  The court held, therefore, that the flyers and promotional materials were not offers to sell under the statute because "none of the companies that received the promotional materials could contractually bind [the defendant] without at least some additional negotiations to these terms."  *Id.* at 14; *see also MEMC Elec. Materials v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1376 (Fed. Cir. 2005) (holding that an e-mail which described the accused product without price terms could not be an offer to sell because the defendant must "communicate[] a manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to the bargain is invited and will conclude it." (citations and internal quotation

marks omitted)); *Hubbell Inc. . DMF, Inc.*, No. CIV.A. 6:11-794-MGL, 2013 WL 152641, at *3 (D.S.C. Jan. 15, 2013) ("Defendant's advertising of its products over the internet or through an independent representative in South Carolina without a communication specific enough for its acceptance by the customer to give rise to a contract, is not an offer to sell and cannot be the basis for specific jurisdiction over Defendants.").

The Plaintiff here alleges that the Defendant solicited business in Connecticut. However, the Defendant argues that its solicitations were not offers to sell because further negotiations would have been necessary to conclude a sale had any party been interested in purchasing the Defendant's products. Even though Sample alleged he could "initialize pricing and provide basic pricing information," there are no allegations by the Plaintiff that such pricing information was ever given, let alone that providing such pricing information could result in a binding contract. Furthermore, Sample's deposition makes clear that he had no authority during these meetings to make any contract because any offer needed to be approved in advance in California, and no such approval was ever sought or granted for a Connecticut prospect. [Dkt. #48-3, Bhasin Declaration, ¶¶ 21-22, 24]. Accordingly, as an acceptance by a Connecticut prospect could not have formed a contract, the Plaintiff has not alleged sufficient facts to show that any "offers to sell" were made by the Defendant in Connecticut. Without this basis, Connecticut does not appear to serve as a locus of operative facts with respect to this dispute. Instead,

the only relevant locus identified in this motion is California. This factor, therefore, weighs in favor of a transfer.

6. <u>Relative Means of the Parties</u>

Although it does not allege that it cannot afford to litigate this claim in California, the Plaintiff argues that this point is neutral because Dataguise has recently received $13 million in financing and thus would have the resources to litigate in Connecticut. [Dkt. #49 at 19–20]. Dataguise claims that Protegrity can afford litigation in either district in light of its numerous cases already pending, which makes it clear that it has "the means to pursue a significant campaign of litigation." [Dkt. #37 at 14]. Dataguise, however, does not claim that it cannot afford to litigate this claim in this District. [*Id.*]. "[T]his factor is not entitled to great weight where plaintiff and defendant are both corporations." *Toy Biz, Inc. v. Centuri Corp.*, 990 F. Supp. 328, 331 (S.D.N.Y. 1998). In *Toy Biz*, the court dismissed the argument that one party has greater resources than the other to pursue litigation when both parties were corporations. *Id.* Similarly here, both the Plaintiff and Defendant are corporations with sufficient resources to pursue litigation in either district and have not argued otherwise nor provided any financial statements for the Court to consider. Accordingly, this factor is neutral.

7. <u>Each Forum's Familiarity of the Governing Law</u>

Finally, Protegrity argues that this factor weighs strongly in favor of keeping the case in this District because this District has "invested a

tremendous amount of its resources in developing familiarity with" the patents at issue in this case given the numerous infringement cases it has filed. [Dkt. #49 at 20-22]. Dataguise argues that this point is neutral as both this District and the District of Northern California are both very capable of handling patent cases. [Dkt. #37 at 14].

Generally, "patent law is federal law and any district court may handle a patent case with equal skill." *Ripmax Ltd. v. Horizon Hobby, Inc.*, No. 3:07-CV-386 (JCH), 2007 U.S. Dist. WL 2049033, at *5. Looking to the parties' arguments, the cases listed by Protegrity in which this District has invested resources are cases that were all handled by a single judge within the District of Connecticut. *See, e.g., Protegrity Corp. v. Ingrian Networks, Inc.*, Case No. 3:08-CV-618 (D. Conn. filed April 25, 2008); *Protegrity Corp. v. Voltage Security, Inc.*, Case No. 3:10-CV-755 (D. Conn. filed May 17, 2010); *Protegrity Corp. v. nuBridges, Inc.*, Case No. 3:10-CV-809 (D. Conn. filed May 21, 2010). This Judge, conversely, has not engaged a technical advisor or spent resources learning the technology at issue in any cases by the Plaintiff pending before her. *See Protegrity Corp. v. Phoenix Payment Systems, Inc.*, No. 3:13-cv-01386; *Protegrity Corp. v. Paymetric, Inc.*, No. 3:13-cv-01549. Thus this court has no particular knowledge or expertise warranting retention of this case based on judicial efficiency. Finally, the Plaintiff did not file a related case notice seeking transfer of this case to the judge who did invest in one of its patent cases. D. Conn. L. R. 40. Instead Protegrity has sent a letter to the Chief Judge of the District

asking that some of its cases be transferred to that to that judge for discovery purposes only.

Furthermore, the importance and expertise exercised by the Northern District of California in the area of patent law cannot be denied. "On December 1, 2000, the United States District Court for the Northern District of California became the first district court to" adopt "Patent Local Rules," rules which have been "cited approvingly by the Federal Circuit." James Ware & Brian Davy, *The History, Content, Application and Influence of the northern District of California's Patent Local Rules*, 25 Santa Clara Computer & High Tech. L.J. 965, 966 (2008). Subsequent to their adoption, many other districts have used these rules as a template. *Id.* It is even acknowledged by practitioners that the Northern District of California is one of the preeminent districts for patent litigation, largely due to it being the home "to centers of technological innovation." Yan Leychkis*, Of Fire Ants and Claim Construction: An Empirical Study of the Meteoric Rise of the Eastern District of Texas as a Preeminent Forum for Patent Litigation*, 9 Yale J. L. & Tech. 193, 201 (2007). In comparison, this district has not adopted any specific patent local rules.

Finally, given that Judge Covello transferred a nearly identical case brought by the Plaintiff to the Northern District of California already, that district is, presumably, adjudicating the patents at issue in this case and may similarly have judges that have spent time and resources understanding the patents and solicited the assistance of equally able

technical advisors.  Given these facts, this factor weighs slightly in favor of a transfer.

### 8. Other Factors

Courts routinely consider other factors in deciding whether justice and fairness require a transfer.  As discussed above, Judge Covello granted a motion to transfer in a nearly identical case, with an identical complaint and identical allegations in opposition to the motion.  *See Protegrity v. Informatica*, No. 13–CV–1410 (D. Conn. filed Mar. 18, 2014).  In order to avoid inconsistent and conflicting results, this Court should adopt that approach and rule similarly.  *See Columbia Pics. Indus., Inc. v. Fung*, 447 F. Supp. 2d 306, 310 (S.D.N.Y. 2006) (transferring a nearly identical case brought by the same plaintiff as in a case then pending in California, even though the defendants were different, to serve the "interests of judicial economy", and to avoid the possibility of "inconsistent decisions"); *Berg v. First Am. Bankshares, Inc.*, 576, F. Supp. 1239, 1243 (S.D.N.Y. 1983) ("Pendency of such a related action in the transferee forum weighs heavily in favor of transfer, not only because '[l]itigation of related claims in the same tribunal . . . facilitates efficient, economical and expeditious pre-trial proceedings and discovery," but also because it 'avoids duplicitious [sic] litigation and inconsistent results.'" (quoting *Durham Prods. V. Sterling Film Portfolio.*, 537 F. Supp. 1241, 1244 (S.D.N.Y. 1982)).  Accordingly, concerns for procedural fairness and justice also weigh in favor of transferring the action.

V.    Conclusion

Balancing these factors, the convenience of the parties, the convenience of the witnesses, the location of physical evidence, the locus of operative facts, and the expertise of the venue all favor a transfer from this District to the Northern District of California.  Furthermore, the Plaintiff's choice of forum and the relative means of the parties are neutral.  None of the factors weigh against transferring this case.  This balance, coupled with the fact that the Plaintiff is a foreign corporation whose choice of forum is given little deference, and the fact that Judge Covello ruled similarly in a nearly identical action brought by the same Plaintiff for infringement of the same patents, provides a strong basis for transfer.  *See Nabisco, Inc.* 2000 WL 1677935, at *4 (granting a motion to transfer when the convenience of the witnesses and availability of process factors weighed in favor of a transfer, the plaintiff's residence was outside the district, and when the transferee district has a related case).

It should also be noted that since the Plaintiff is a foreign corporation, it is doubtful whether it could avail itself of the Connecticut Long Arm Statutes; a prerequisite for this Court to exercise personal jurisdiction over the Defendant.[3]  Litigation over the personal jurisdiction

---

[3]    Conn. Gen. Stat. § 33-929(f) and 33-929(e) are the relevant long arm statutes to this case.  Section 33-929(f) requires that the Plaintiff be a "resident of this state," or "a person having a usual place of business in this state[.]"  Section 33-929(e) is only applicable to defendant corporations that are transacting business within the state without a certificate of authority from the Secretary of the State as provided by Conn. Gen. Stat. § 33-920(a).  The definition of "transacting business" for the purposes of this

issue can be avoided by transferring the case to the district of the

Defendant's principal place of business: the Northern District of California.

Though the Defendant's arguments related to personal jurisdiction seem to

have merit, the Court finds that transfer, rather than dismissal, better

serves justice as dismissing this case on personal jurisdiction grounds

would surely result in the refilling of the action elsewhere, and the resulting

legal process would unnecessarily delay the speedy resolution of this

case.  Considering all of these factors, this Court finds that the interests of

justice and fairness are best served by transferring the case to the

Northern District of California, and the Court declines to consider whether

this case should be dismissed for a lack of personal jurisdiction or

improper venue.

For the reasons stated above the Defendant's Motion to Transfer to

the Northern District of California is GRANTED.

IT IS SO ORDERED.


_____/s/_____
Hon. Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut: September 3, 2014

---

statute is extremely narrow so that the following activities – among
numerous others listed – are not considered transacting business:
"soliciting or obtaining orders, whether by mail or through employees or
agents or otherwise, if the orders require acceptance outside this state
before they become contracts" and "transacting business in interstate
commerce." Conn. Gen. Stat. § 33-920(b). The Connecticut legislature has
also stated that this list of exceptions to "transacting business" is not
exhaustive.  Conn. Gen. Stat. § 33-920(c).  It is unclear from the facts
alleged in this case whether any of these provisions are satisfied.